## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| AVITUS, INC., | CV 17-69-BLG-TJC |
| Plaintiff/Counter-Defendant, | |
| vs. | |
| NEA DELIVERY, LLC and NICHOLAS BULCAO, individually, | **ORDER** |
| Defendants/Counter-Claimants, | |
| _____ | |
| AVITUS, INC., | |
| Third-Party Plaintiff, | |
| vs. | |
| AMERICAN ZURICH INSURANCE COMPANY, | |
| Third-Party Defendant. | |

Before the Court are two motions filed by plaintiff/counter-defendant/third-party plaintiff Avitus, Inc. ("Avitus"): (1) Motion to Deem Facts Admitted, for Sanctions, for Dismissal of Counterclaims, and for Entry of Default Judgment or for Summary Judgment (Doc. 47) (the "Sanctions Motion"); and (2) Motion to Enforce Settlement Agreement (Doc. 58) (the "Settlement Motion").

Defendants/counter-claimants NEA Delivery, LLC ("NEA") and Nicholas Bulcao ("Bulcao"), (collectively, "Defendants") oppose both motions. Third-party defendant American Zurich Insurance Company ("Zurich") has joined in the Settlement Motion, but has not expressed a position as to the Sanctions Motion. (*See* Doc. 62.) For the reasons that follow, the Sanctions Motion and the Settlement Motions are **DENIED**.

## I.     Pertinent Facts

The following facts are taken from the parties' briefing and other pleadings contained in the case docket, and are assumed to be true for the purposes of ruling on the instant Motions. The facts are undisputed unless otherwise noted.

### A.     Background

In October 2014, NEA and Avitus entered into a Professional Employment Agreement (the "PEA"), "whereby Avitus would provide various services to NEA, including payroll processing, as well as insurance coverage under a Worker's Compensation Insurance policy and an EPLI policy." (Doc. 59 at 2-3.) Bulcao personally guaranteed NEA's performance of the terms and conditions of the PEA. (*Id*. at 3; *see also* Doc. 34 at ¶ 3.)

In April 2017, Avitus filed suit against Defendants in Montana state court alleging that NEA had failed to pay for services Avitus provided pursuant to the PEA. (Doc. 5.) Defendants timely removed Avitus's suit to this Court, and

counterclaimed against Avitus for claims also related to the PEA.  (Docs. 1, 2.)
The Court will discuss below the precise nature of each party's claims as
necessary.

On August 22, 2017, Defendants filed a Motion for a Mandatory Preliminary
Injunction, claiming NEA inadvertently wired roughly $350,000.00 to Avitus.
NEA alleged that despite its prompt notice to Avitus that the transfer was
inadvertent, Avitus inappropriately retained $172,524.26 of the transfer.  (*See*
Docs. 21, 22.)  Avitus responded that it was entitled to that sum, due to the very
claims that form the basis of this lawsuit.  (Doc. 25.)

### B.    Facts Relating Primarily to the Sanctions Motion

On September 22, 2017, Avitus sent its First Discovery Requests to
NEA Delivery, LLC (Doc. 49-1.)   The discovery requests contain nine
requests for admission (the "RFAs") that directly reach the merits of the
parties' claims.  (*Id*. at 3-5.)  For example, NEA was asked to admit "that as
of August 2, 2017, NEA owed Avitus $172,524.26," representing the amount
Avitus retained from the inadvertent wire transfer.  (*Id*. at 3.)  NEA was also
asked to admit that "Avitus's alleged breaches of the PEA are (1) unproven
and (2) unliquidated."  (*Id*. at 4.)  It is undisputed that NEA did not timely
respond to Avitus's discovery requests, including to the RFAs.

On October 25, 2017, Defendants' counsel filed a Motion to Withdraw as Counsel of Record. (Doc. 37.) Counsel represented in the motion that Avitus had agreed to allow Defendants an additional 30 days to respond to Plaintiff's first combined set of discovery requests. (Doc. 37 at 2.) Defendants' responses were therefore due on or about November 22, 2017. *Id.* After first denying their motion on procedural grounds, the Court granted their Amended Motion to Withdraw as Counsel of Record on December 18, 2017. (Doc. 41.)

As discussed more fully below, counsel for Avitus was then contacted on January 23, 2018 by a California attorney who had been retained to represent Defendants to discuss settlement of this case. Settlement discussions ensued between January 23 and February 22, 2018. (Doc. 67-1 at 12.) At that time, settlement efforts broke down, and Avitus's counsel was advised that Defendants intended to secure counsel to represent them in this action.

In the meantime, Avitus filed the Sanctions Motion on February 2, 2018. (Doc. 47.) Defendants failed to respond to the motion in the time set forth in D. Mont. L.R. 7.1(d)(1)(B). Therefore, on March 2, 2018, the Court addressed both Defendants' failure to respond to the Sanctions Motion and their lack of counsel since withdrawal, ordering as follows:

> (1)    on or before **March 16[,] 2018**, NEA shall either (a) retain new counsel and such counsel shall enter a notice of appearance on its behalf, or (b) show cause, if any, why it is unable to retain counsel;

(2) on or before **March 16, 2018**, Bulcao shall either (a) retain new counsel and such counsel shall enter a notice of appearance on his behalf, (b) show cause, if any, why he is unable to retain counsel, or (c) file a notice with the Court of his intent to proceed *pro se*; and

(3) on or before **March 16, 2018**, Defendants shall show cause, if any, why the Court should not deem Avitus's Motion to be well-taken in accordance with L.R. 7.1(d)(1)(B)(ii).

(Doc. 54.)

Defendants' present counsel entered a notice of appearance on March 15, 2018. (Doc. 55.) After a series of time-extensions, Defendants responded to the Sanctions Motion on April 11, 2018. (Doc. 68.) In conjunction with their response to the Sanctions Motion, Defendants submitted an Affidavit of Nicholas Bulcao. (Doc. 68-1.) In his affidavit, Bulcao admits NEA did not respond to the discovery requests "in a timely fashion." (*Id*. at ¶ 2.) He stated the discovery was extensive, and "we do not and did not have the resources to answer." (*Id.* at ¶ 4.) Bulcao explained that NEA "anticipated settlement and transferred the few resources we had to not focus on the discovery requests." (*Id.* at ¶ 7.) Bulcao also stated that the Defendants do not have access to some of the information requested. (*Id.* at ¶ 5.) Defendants do not make any representation that they have responded to Avitus's RFAs, or to its other discovery requests.

## C. Facts Relating Primarily to the Settlement Motion

Concurrent to this litigation, NEA is defending three actions in California. (Docs. 59 at 3, 59-3.) Avitus represents that it "is a named co-defendant in some,

but not all of those California actions."  *Id.*  NEA and Avitus have competing indemnification claims in each case.  (*Id*. at 3-4.)

As noted above, counsel for Avitus, T. Thomas Singer, was contacted on January 23, 2018, by Richard Mooney, who purportedly represented to Singer that he is a California attorney who had been engaged to represent Defendants.  (Doc. 59 at 3.)  Avitus claims – and Mooney confirms – that the purpose of the January 23 phone call was to discuss settlement of the case.  (*Id*.; *see also* Doc. 67-1 at 4.)

On January 26, 2018, Mooney sent a letter to Singer thanking him for "taking the time to update me on and discuss the potential resolution of the *Avitus v. NEA Delivery* litigation."  (Doc. 67-1 at 9.)  A series of letters and emails followed, discussing various settlement proposals.  Most pertinent are the following excerpts:

- On February 7, 2018, Mooney sent an email to Singer indicating "I have spoken with my client and been authorized to propose that the parties settle the dispute on a walk away basis."  (Doc. 67-1 at 11.)

- On February 8, 2018, Singer responded, "[i]f NEA and Mr. Bulcao are proposing a mutual release of all claims, including Avitus's claim for attorneys' fees and any claims where NEA is seeking or could seek contribution or indemnity, and any other claims arising from or relating to the co-employment relationship that formerly existed between NEA and Avitus, then Avitus will accept the proposal."  (*Id*.)

- On February 8, 2018, Mooney responded, "[t]hat is indeed our proposal, and I am pleased your client will agree."  (Doc. 59-2.)

- On February 15, 2018, following receipt on February 12, 2018, of Singer's propose release and proposed stipulation to dismiss, Mooney

wrote that the release and stipulation "[b]asically seems fine to me…with the possible exception of the material re N & E / California actions, about which I was not aware." (Doc. 67-1 at 13.)

- On February, 20, 2018, Singer asked, "[a]re we going to get this wrapped up?" (*Id.*)

- On February 20, 2018, Mooney told Singer that Defendants "will not waive their rights with respect to [the California] actions." Mooney stated to Singer, "[y]ou and I were only discussing the Montana action, and indeed I had no knowledge of or involvement with the California actions." (*Id.* at 12.)

- On February 20, 2018, Singer responded that he assumed Mooney knew about the California actions because he (Mooney) practices in California, and Mooney's clients knew about the actions at any rate. Singer explained that he would move the Court to enforce settlement if Defendants did not agree to settle all of the cases on a walk-away basis. (*Id.*)

- On February 22, 2018, Mooney sent Singer a letter, reading in pertinent part, "[f]or at least two weeks, you and I discussed…the merits of the parties' positions in the Montana litigation…. At no time was there any discussion of the multi-million dollar dispute in California. The agreement we were negotiating involved only the Montana action." (*Id.* at 14.)

Avitus filed the Settlement Motion on March 23, 2018, arguing that these communications between Singer and Mooney constitute a binding agreement to settle the instant Montana litigation and the three California cases. (Doc. 62.)

## II.    Discussion

### A.    Sanctions Motions

In its Sanctions Motion, Avitus requests several potential avenues to remedy what it believes to be sanctionable conduct by Defendants. (*See generally* Doc.

48.)  The Court will discuss each of these below in the order it finds most appropriate.

## 1.    Fed. R. Civ. P. 36

Avitus asserts that its RFAs to NEA should be deemed admitted.  Fed. R. Civ. P. 36(a)(3) states that a RFA is admitted "unless, within 30 days after service of the request…the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney."

Once a RFA is admitted, the matter "is conclusively established unless the court on motion permits withdrawal or amendment of the admission" pursuant to Fed. R. Civ. P. 36(b).  Rule 36(b) provides in full:

> A matter admitted under this rule is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended. Subject to Rule 16(e), the court may permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits.  An admission under this rule is not an admission for any other purpose and cannot be used against the party in any other proceeding.

There is no dispute that NEA failed to respond to Avitus's RFAs within the 30-day period contemplated by Rule 36(a).  (*See* Docs. 68 at 2 ("…Defendants admit that thirty days have passed after being served the requests for admission."), 68-1 at ¶ 2.)  Notwithstanding that admission, Defendants argue that "the Court has

not deemed any facts admitted," and urge that Avitus's "request to have facts deemed admitted should be denied because the two prongs of the Rule 36(b) test can be met." (Doc. 68 at 2.)

Defendants misunderstand the operation of Rule 36(a). Once NEA failed to respond to Avitus's RFAs within the time prescribed by Rule 36(a), "the facts were…admitted without the need for any further action by the court or the parties." *Layton v. International Association of Machinists and Aerospace Workers*, 285 Fed.Appx. 340, 341 (9th Cir. 2008) (citing *F.T.C. v. Medicor LLC*, 217 F.Supp.2d 1048, 1053 (C.D. Cal. 2002) ("No motion to establish the admissions is needed because [Rule 36(a)] is self-executing.")). Accordingly, the question before the Court is not whether to deem the RFAs admitted in the first instance, but whether Rule 36(b) should operate to relieve NEA of those admissions.

Rule 36(b) is permissive, not mandatory, with respect to the withdrawal of admissions. *See Asea, Inc. v. S. Pac. Transp. Co.,* 669 F.2d 1242, 1248 (9th Cir. 1981). The rule permits a district court to exercise its discretion to grant relief from an admission made under Rule 36(a) only when "(1) presentation of the merits of the action must be subserved, and (2) the party who obtained the admission must not be prejudiced by the withdrawal." *Hadley v. United States,* 45 F.3d 1345, 1348 (9th Cir. 1995).

The first prong is "satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." *Id.* As to the second prong, "[t]he prejudice contemplated by Rule 36(b) is 'not simply that the party who obtained the admission will now have to convince the factfinder of its truth. Rather, it relates to the difficulty a party may face in proving its case, *e.g.* caused by the unavailability of key witnesses, because of the sudden need to obtain evidence' with respect to the questions previously deemed admitted." *Id.* (quoting *Brook Vill. n. Assocs. v. Gen. Elec. Co.*, 686 F.2d 66, 70 (1st Cir. 1982). The party seeking to enforce the admission has the burden to establish prejudice under the second prong. *Id.*

Additionally, in deciding a motion to withdraw an admission under Rule 36(b), a court must consider the core purpose of the rule. *Conton v. U.S.,* 474 F.3d 616, 622 (9th Cir. 2007). That is, "the rule seeks to serve two important goals: truth seeking in litigation and efficiency in dispensing justice." *Id.*

Applying the requirements of Rule 36(b), and being mindful of the fundamental purpose of the rule, the Court finds that Defendants should be permitted to withdraw their admissions to Avitus's RFAs. As to the first prong of the analysis, there is little question that upholding the admissions would practically elimination a determination of the merits. Defendants submit "[t]he nine facts [Avitus] seeks to be deemed admitted will essentially destroy any dispute

Defendants have," and that "[t]he nine facts are in dispute because they essentially make Plaintiff's case true." (Doc. 68 at 3.) Avitus does not dispute this. In fact, it has moved for summary judgment as to all of its claims, and all of Defendants' counterclaims, based solely upon the nine RFAs. (Doc. 49.)

Avitus has also not carried its burden with respect to the second prong. It does not maintain, for example, to have relied upon any of the admissions to their detriment, or that they do not have the opportunity to address any of the issues previously deemed admitted. Nor have they shown that the failure to timely respond to the RFAs, or their deemed admission, caused the unavailability of any witness or loss of any evidence.[1] No trial date is currently set in this matter, and the Court will address any prejudice to Avitus by giving it the full opportunity to conduct discovery on the issues covered by its RFAs.

Avitus also argues it would be improper to relieve Defendants of their admissions because Rule 36(b) provides that the Court may only permit an admission to be withdrawn "on motion." Since Defendants have not filed a Rule 36(b) motion, Avitus argues, the Court cannot apply the rule to relieve them of the consequences of failing to respond to the RFAs.

---

[1] NEA has indicated it does not have access to certain information requested in discovery. (Doc. 68-1 at ¶ 5.) But the nature and significance of this information is not apparent, and there has been no showing the information would have been available had NEA timely responded to the RFAs.

While Avitus is correct that Rule 36(b) contemplates a motion to withdraw or amend an admission, several decisions have found that a formal motion is not required when a party otherwise seeks to be relieved of an admission. The Eighth Circuit, for example, has interpreted the motion requirement under Rule 36(b) "generously . . . to encompass court filings that were not formal motions." *Quasius v. Schwan Food Co.*, 596 F.3d 947, 951 (8th Cir. 2010). The Ninth Circuit has also stated that its precedent "does not require that a request for relief under Rule 36(b) be brought in a separate motion." *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1185 (9th Cir. 2016). *See also*, *Whitsitt v. Club Resource Group*, 357 Fed. Appx. 877, 878 (9th Cir. 2009) (district court did not abuse its discretion by construing opposition to motion for summary judgment as a motion to withdraw admissions under Rule 36); *Elements of Behavioral Health, inc. v. Marcus*, 2017 WL 5634854 *4 (C.D. Cal. September 6, 2017) (response to summary judgment can be construed as a request to amend admissions under Rule 36(b).

Here, while the Defendants' response to Avitus's Sanctions Motion was not styled as motion for relief under Rule 36(b), such a request is clearly the import of their response. Defendants request that the RFAs not be admitted, and they specifically address Rule 36(b) and the Ninth Circuit decisions outlining the requirements for relief under the rule. (Doc. 68 at 2-4.) To deny Defendants relief

based upon their failure to properly designate their pleading would be an overly-technical application of Rule 36(b), and would clearly contravene the truth-seeking purpose of Rule 36.

Avitus does, however, raise an issue of concern in its discussion of this issue. That is, NEA has not indicated it is now prepared to fully respond to Avitus's discovery requests and participate in discovery. In fact, Bulcao's affidavit indicates NEA does not have the resources to do so. Lack of resources is not proper grounds for failing to respond to appropriate discovery requests. If a party concludes that discovery requests impose an undue burden or expense under the rules, it is permitted to move for a protective order under Fed. R. Civ. P. 26(c). If a party does not have access to certain information requested, it must respond and explain that it does not have the information and why it cannot gain access to the information. But not responding is not an option. NEA must fully participate and cooperate in the discovery process. To that end, and to ensure no further prejudice to Avitus, NEA must provide full and complete responses to Avitus's First Discovery Requests to NEA Delivery, LLC within 30 days from the date of this order.

/ / /

/ / /

/ / /

## 2.     Fed. R. Civ. P. 41(b)

Avitus contends that NEA's counterclaims should be dismissed for failure to prosecute under Fed. R. Civ. P. 41(b) and L.R. 83.8(b). Fed. R. Civ. P. 41(b) authorizes the Court to dismiss an action "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order[.]" Avitus argues that dismissal under Rule 41(b) is proper here because Defendants have failed to comply with multiple court orders, have failed to participate meaningfully in discovery, and generally have failed to prosecute their case. (Doc. 48 at 7-10.)

In considering dismissal under Rule 41(b), a court must weigh five factors: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the availability of less drastic alternatives; and (5) the public policy favoring disposition of cases on their merits." *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002), *cert. denied*, (2003) (citing *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992)).

### a.     Expeditious Resolution

"The public's interest in expeditious resolution of litigation always favors dismissal." *Yourish v. California Amplifier*, 191 F.3d 983, 990 (9th Cir. 1990). While Avitus overstates the degree to which Defendants have failed to comply with this Court's orders, it is true that Defendants have failed to comply with certain directions of the Court, and have failed to respond to Avitus's discovery

requests. In addition, their dilatory conduct has resulted in a delay in the prosecution and resolution of this action. Therefore, this factor weighs in favor of dismissal.

### b.    Docket Management

"The trial judge is in the best position to determine whether the delay in a particular case interferes with docket management and the public interest." *Pagtalunan*, 291 F.3d at 642 (*citing Yourish*, 191 F.3d at 990). As noted by the Ninth Circuit, "[i]t is incumbent upon us to preserve the district courts' power to manage their docket without being subject to the endless vexatious noncompliance of litigants . . . ." *Ferdik*, 963 F.2d at 1261.

Litigants who do not prosecute their cases, and do not obey the Court's orders, disrupt the Court's handling of other matters by consuming time and resources needed by litigants who responsibly manage their cases. The Court cannot manage its docket if a party ignores Court orders.

Nevertheless, the Court recognizes that Defendants were unrepresented for a significant portion of the delay which may be attributable to Defendants' untimeliness. While that certainly does not relieve them of their obligations to the Court and opposing parties, Defendants are now represented. The Court is confident their current counsel will adhere to the Court's orders and deadlines going forward. The Court therefore finds this factor weighs against dismissal.

### c. Prejudice to Defendants

"To prove prejudice, a defendant must establish that plaintiff's actions impaired defendant's ability to proceed to trial or threatened to interfere with the rightful decision of the case." *Pagtalunan*, 291 F.3d at 642 (*citing Malone v. United States Postal Serv.*, 833 F.2d 128, 131 (9th Cir. 1987)). "Limited delays and the prejudice to a defendant from the pendency of a lawsuit are realities of the system that have to be accepted, provided the prejudice is not compounded by 'unreasonable' delays." *Id*. But "[t]he law…presumes prejudice from unreasonable delay." *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d at 1227. "Unnecessary delay inherently increases the risk that witnesses' memories will fade and evidence will become stale." *Pagtalunan*, 291 F.3d at 642 (*citing Sibron v. New York*, 392 U.S. 40, 57 (1968)). Nevertheless, the presumption may be rebutted if there is a showing that no actual prejudice occurred. *In re Phenylpropanolamine (PPA) Products Liability Litigation*, 460 F.3d at 1228.

While the Defendants can reasonably be charged with a delay of at least three months between the withdrawal of their counsel on December 18, 2017, and the appearance of new counsel on March 15, 2018, there has been no showing that their actions caused actual prejudice, or will interfere with Avitus's ability to

obtain a fair trial and the rightful decision of the case.  Therefore, this factor weighs against dismissal.

### d.　　Alternatives

"'The district court abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction and the adequacy of less drastic sanctions.'" *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 131–32 (quoting *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 912 (9th Cir.1986)).  In this case, Defendants have now secured counsel to represent them in this action.  As noted above, as an alternative to dismissal or other sanctions, Defendants will be ordered to respond to Avitus's discovery requests within 30 days, and the Court will provide Avitus with the additional time it requires to conduct necessary discovery. This alternative is sufficient to address any prejudice caused by the Defendants' delay.  Therefore, this factor weighs against dismissal.

### e.　　Disposition on the Merits

Finally, public policy favors the disposition of cases on their merits. *Pagtalunan*, 291 F.3d at 643 (*citing Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998)).  However, the Ninth Circuit "[has] also recognized that this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction." *In re PPA*, 460 F.3d at 1228.  Given that Defendants are now

represented by counsel and are in a position to move their counterclaims forward, this factor weighs against dismissal at this time.

### f.      Conclusion

On balance, consideration of relevant factors leads to the conclusion that dismissal is inappropriate.  Avitus's motion for Rule 41(b) dismissal is therefore **DENIED**.

### 3.      Fed. R. Civ. P. 16(f) and 37(c)

Avitus moves for sanctions under Fed. R. Civ. P. 16(f) and 37(c), again citing Defendants' failure to comply with this Court's orders and failing to respond to discovery.  Rule 16(f) provides: "[o]n motion or on its own, the court may issue any just orders, including those authorized by Rule 37(b)(2)(A)(ii)-(vii), if a party or its attorney: (A) fails to appear at a scheduling or other pretrial conference; (B) is substantially unprepared to participate – or does not participate in good faith – in the conference; or (C) fails to obey a scheduling or other pretrial order."  Under Rule 37(c), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)

For the same reasons discussed above, the Court declines to sanction Defendants under these Rules.  But the Court has made Defendants aware of its

expectations moving forward, and it may readdress sanctions under these and other rules if Defendants do not fully comply with the Court's orders or their discovery obligations. At this time, however, Avitus's Rule 16(f) and 37(c) motions are **DENIED**.

### 4. Fed. R. Civ. P. 56

As part of its Sanctions Motion, Avitus has requested the entry of summary judgment in its favor, apparently as to all claims asserted in its Amended Complaint and all counterclaims brought by Defendants.

Summary judgment is appropriate where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23.

Avitus's summary judgment motion is based entirely upon NEA's deemed admissions to its RFAs. As determined above, however, NEA has been permitted

to withdraw those admissions.  Therefore, the entire factual bases for Avitus's

motion has been vacated, and its motion for summary judgment must be **DENIED**.

### 5.    Fed. R. Civ. P. 55

Avitus has also moved for default judgment "on all remaining claims

against NEA."  (Doc. 48 at 10.)  This motion is based on the same violations of the

Court's orders and failure to respond to discovery.

While a district court has discretion to impose the sanction of default, it is a

harsh penalty imposed in only extreme circumstances.  *Dreith v. Nu Image, Inc.*,

648 F.3d 779, 788 (9th Cir. 2011).  As the Seventh Circuit has recognized,

"[d]efault judgment is strong medicine for discovery abuse.  It is appropriate only

where there is a clear record of delay or contumacious conduct, where other less

drastic sanctions have proven unavailing, or where a party displays willfulness, bad

faith, or fault."  *Domanus v. Lewicki*, 742 F.3d 290, 301 (7th Cir. 2014) (internal

quotations and citations omitted.)  In determining whether the sanction is

appropriate, a district court must evaluate the same five factors outlined above for

dismissal under Rule 41(b).  *Dreith*, 648 F.3d at 788.

For the reasons explained above with respect to Rule 41(b), dismissal is not

appropriate in this case.  While Defendants' conduct has been dilatory, it does not

warrant such an extreme measure.  Defendants are now represented by counsel;

they have been ordered to respond fully to discovery within 30 days; and Avitus

will be provided the opportunity to conduct any discovery necessary to address the issues in the case and prepare for trial.

This case should be determined on the merits, not through sanctions and default. Avitus's Rule 55 motion is therefore **DENIED**.

## B. Settlement Motion

Avitus has also filed a separate motion to enforce an alleged settlement between the parties. "Settlement agreements are contracts, subject to the provisions of contract law." *Kluver v. PPL Montana, LLC*, 293 P.3d 817, 824 (Mont. 2012). A contract must contain all its essential terms in order to be binding. *Id*. A contract requires (1) identifiable parties capable of contracting; (2) their consent; (3) a lawful object; and (4) a sufficient cause or consideration. *Id*. "The consent of the parties requires that there be a 'mutual assent or a meeting of the minds on all essential terms to form a binding contract.'" *Global Client Solutions, LLC v. Ossello*, 367 P.3d 361, 367 (Mont. 2016) (quoting *Keesun Partners v. Ferdig Oil Co.*, 816 P.2d 417, 421 (1991).

Avitus argues that the email exchange excerpted above between Singer and Mooney contains all the essential elements of a contract. Therefore, it contends the Court should enforce the agreement in the manner Avitus insists: that is, a mutual walk-away in this case and in the three extra-jurisdictional California cases. (*See generally* Doc. 59.) Defendants argue they never consented to settle the California

cases, and therefore an essential element of a contract is missing.  (*See generally* Doc. 67.)

"It is well settled that a district court has the equitable power to enforce summarily an agreement to settle a case pending before it," *Anand v. Cal. Dept. of Developmental Services*, 626 F.Supp.2d 1061, 1064 (E.D. Cal. 2009). Nevertheless, Avitus has not explained, much less established, this Court's power to enforce a settlement agreement that would terminate cases currently pending in other jurisdictions.  *See e.g., States v. Orr Const. Co.*, 560 F.2d 765, 769 (7th Cir. 1977) ("the court's jurisdiction to enforce a settlement agreement must derive from its original jurisdiction over the complaint").  Regardless, the Court agrees with Defendants that the exchange between Singer and Mooney did not create a binding settlement agreement.

As Mooney explains in his affidavit – and as the available documentary evidence confirms – none of the communications between Mooney and Singer, whether written or telephonic, contained any mention of the California cases until Avitus's February 12, 2017 proposed settlement agreement.  That proposal was rejected.  (Doc. 67-1 at ¶ 14.)  Avitus does not dispute that Mooney and Singer never discussed the California cases; rather, Avitus relies on language from Singer's February 8, 2018, email to Mooney purporting to settle "any claims where NEA is seeking or could seek contribution or indemnity, and any other claims

arising from or relating to the co-employment relationship that formerly existed between NEA and Avitus."  (Doc. 59-2).  According to Avitus, the quoted language – which does not mention the California cases or any extra-jurisdictional dispute – unambiguously includes not only claims arising from the allegations in the instant lawsuit, but also "contribution or indemnity claims, whether asserted or unasserted by NEA or by Avitus, in existing actions, actions that do not exist, and actions that neither party is aware of…without respect to jurisdiction."  (Doc. 59 at 9.)  This argument is devoid of merit.

Mooney's January 26, 2018 letter to Singer begins by thanking Singer for "discuss[ing] the potential resolution of the *Avitus v. NEA Delivery* litigation." (Doc. 67-1 at 9.)  Regardless of Avitus's and NEA's respective involvements in the California cases, none of those cases are captioned "*Avitus v. NEA Delivery*"; only this case.[2]  None of Mooney's or Singer's later correspondences evince any contemplation of the settlement of disputes other than this case.  It is clear to the Court that Mooney understood – and only had cause to believe – that he was discussing settlement of the instant lawsuit.  If Singer meant for those settlement discussions to include the California cases, he should have expressed that intention more forthrightly than he did.

---

[2] The Court also notes the use of the definite article "the," and singular "litigation."

Mooney has attested by sworn affidavit that he and Singer never discussed the California cases; Mooney was not involved in the California cases; he had no authority to settle the California cases; and indeed, he was unaware of them prior to receipt of Avitus's proposed settlement agreement. Avitus offers no evidence to discredit any of these assertions. Accordingly, the Court finds that there was not a "meeting of the minds" as to the involvement of the California cases in the settlement agreement, and that the purported agreement to settle therefore lacked the essential element of consent. *Ossello*, 367 P.3d at 367.

The Court similarly rejects Zurich's argument that Avitus and Defendants settled this case regardless of the applicability of the agreement to the California cases. (*See* Doc. 71 at 13.) As explained, the Court finds that the purported agreement did not contain all of the essential terms of a contract, and therefore no contract was ever formed from which the Court could sever and enforce certain terms to the exclusion of others.

For the foregoing reasons, the Settlement Motion is **DENIED**.

## IV.    Conclusion

The Court hereby ORDERS as follows:

(1)    Avitus's Motion to Deem Facts Admitted, For Sanctions, For Dismissal of Counterclaims, And For Entry of Default Judgment Or For Summary Judgment (Doc. 47) is **DENIED**;

(2)     Avitus's Motion To Enforce Settlement Agreement (Doc. 58) is

**DENIED**;

(3)     Zurich's Motion to Enforce Settlement Agreement (Doc. 62) is

**DENIED**;

(4)     NEA shall respond to Avitus's First Discovery Requests within thirty

(30) days of the date of this Order.  Defendants are advised that any future failure

to fully comply with the Court's orders or its discovery obligations may be met

with sanctions.  Depending on the nature of the violation, this may include the

entry of judgment in favor of Avitus on its claims, and the dismissal of the

Defendants' counterclaims.

 DATED this 10th day of September, 2018.

_____

TIMOTHY J. CAVAN
United States Magistrate Judge